In re CHERRY POND COAL COMPANY, Debtor.

ARMCO, INC., Plaintiff,

v.

CHERRY POND COAL COMPANY and Kessler Coals, Inc., Defendants.

Bankruptcy No. 81–20504.
Adv. No. 82–0311.

United States Bankruptcy Court,
S. D. West Virginia.

Decided July 8, 1982.
Opinion July 16, 1982.

Robert E. Douglas, Charleston, W. Va., for debtor-defendant Cherry Pond Coal Co.

Marshall C. Spradling and Charles L. Woody, Charleston, W. Va., for plaintiff Armco, Inc.

Thomas R. Goodwin and Susan Wittemier, Charleston, W. Va., for defendant Kessler Coals, Inc.

## MEMORANDUM OF OPINION

EDWIN F. FLOWERS, Bankruptcy Judge.

This Court ruled from the bench on July 8, 1982, that it lacked jurisdiction to grant a temporary restraining order to the Plaintiff, Armco, Inc., citing *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and ordered the matter transferred to the District Court. This Memorandum is issued to further explain the basis for that transfer.

Armco, Inc., seeks to restrain Kessler Coals, Inc. from mining coal on Armco property and to recover compensatory damages for coal previously removed. Kessler claims a right to mine the coal under a contract with Cherry Pond Coal Company, a chapter 11 debtor in possession. This proceeding requires a determination of bankruptcy court jurisdiction during the interim between the *Pipeline* decision, *Id.*, and corrective action by Congress.

By its ruling handed down on June 28, 1982, the United States Supreme Court held:

§ 241(a) of the Bankruptcy Act of 1978 has impermissibly removed most, if not all, of 'the essential attributes of the judi-

cial power' from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts.

*Id.* at ——, 102 S.Ct. at 2879–80. The jurisdiction bestowed upon bankruptcy judges under the Bankruptcy Reform Act of 1978 [1] was thus held to be unconstitutionally broad. The Court limited the effect of its ruling, however, by making it applicable "only prospectively" and by staying its judgment until October 4, 1982. *Id.* at ——, 102 S.Ct. at 2879–80. Thousands of discharges and judgments entered by this and other bankruptcy courts prior to June 28, 1982, are consequently validated. The validity of bankruptcy court action on and after June 28, 1982, is not as easily discerned. The precise wording of the plurality opinion and the precedents it cites must be carefully examined to determine the extent of bankruptcy court jurisdiction during this interim. The Supreme Court stated with respect to this period:

> We hold, therefore, that our decision today shall apply only prospectively.
>
> The judgment of the District Court is affirmed. However, we stay our judgment until October 4, 1982. This limited stay will afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws. See *Buckley v. Valeo*, 424 U.S. 1, 143 [96 S.Ct. 612, 693, 46 L.Ed.2d 659] (1976); cf. *Georgia v. United States*, 411 U.S. 526, 541 [93 S.Ct. 1702, 1711, 36 L.Ed.2d 472] (1973); *Fortson v. Morris*, 385 U.S. 231, 235 [87 S.Ct. 446, 449, 17 L.Ed.2d 330] (1966); *Maryland Comm. v. Tawes*, 377 U.S. 656, 675–676 [84 S.Ct. 1429, 1439–40, 12 L.Ed.2d 595] (1964).

*Id.* at ——, 102 S.Ct. at 2879–80. The language employed to stay the Court's judgment is taken directly from the *Buckley* decision which the Court cites as direct authority for its action. We cannot avoid application of the law of *Buckley* in determining the constitutional limits within which the bankruptcy court may operate during the stay. In *Buckley*, the Court held that the Federal Elections Commission could not exercise all of the administrative powers granted it under the statute since the method by which Commission members were selected was unconstitutional. *Buckley v. Valeo*, 424 U.S. at 141–142, 96 S.Ct. at 692. Citing its precedents in apportionment and voting rights cases, the Court validated the past acts of the Commission and authorized the Commission to "exercise the duties and powers granted it under the Act" during a 30-day period. *Id.* at 142, 96 S.Ct. at 692. The Court noted that

> [T]he Commission's inability to exercise *certain powers* because of the method by which its members have been selected should not affect the validity of the Commission's administrative actions and determinations to this date, including its administration of *those provisions, upheld today,* authorizing the public financing of federal elections. [*Emphasis supplied.*]

*Id.* It explained

> This limited stay will afford Congress an opportunity to reconstitute the Commission by law or to adopt other valid enforcement mechanisms without interrupting enforcement of *the provisions the Court sustains,* allowing the present Commission in the interim to function de facto in accordance with the substantive provisions of the Act. Cf. *Georgia v. United States*, 411 U.S. 526, 541, 36 L.Ed.2d 472, 93 S.Ct. 1702 [1711] (1973); *Fortson v. Morris*, 385 U.S. 231, 235, 17 L.Ed.2d 330, 87 S.Ct. 446 [449] (1966); *Maryland Comm. v. Tawes*, 377 U.S. 656, 675–676, 12 L.Ed.2d 595, 84 S.Ct. 1429 [1439–40] (1964). [*Emphasis supplied.*]

*Id.* at 143, 96 S.Ct. at 692. The Court thus distinguished the constitutionally infirm provisions of the Act from those provisions which could be upheld and authorized the Commission during the stay to function

1. Pub.L. 95–598, 92 Stat. 2549.

"without interrupting enforcement of the provisions the Court sustains." *Id.*

Similarly, in the voting rights cases, the Court has validated past actions of unconstitutionally constituted bodies but has not tolerated repetition during the stay of any unconstitutional activity.[2]

■ Applying the law of *Buckley* and the voting rights cases to bankruptcy administration means that the bankruptcy judge cannot continue after June 27, 1982, to exercise unconstitutionally broad powers. In other words, powers of an Article III judge may not be exercised by the bankruptcy judge in this interim. In none of the cases cited by the Court in *Pipeline* was the continued violation of the Constitution condoned. The bankruptcy judge, however, is authorized and expected under the Court's decision to exercise those powers granted under the Bankruptcy Reform Act of 1978 which are not constitutionally infirm. The bankruptcy court during the stay may exercise powers similar in nature to powers of

adjuncts declared legitimate in *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), and *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). A description of those adjunct powers is beyond the needs of the case at bar.[3] It is clear, however, that the injunctive relief and damages sought by Armco, Inc. against Kessler Coals, both being nonbankruptcy debtors, is beyond the authority of an adjunct to grant. Consequently, the plenary jurisdiction of an appropriate court should be invoked.

---

**2.** Cf. *Georgia v. United States,* 411 U.S. 526, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973), where the Supreme Court allowed a Georgia election to proceed during the pendency of the appeal and then validated that election, though it subsequently held invalid the apportionment plan under which it was conducted. It should be remembered that the stay ordered by the Supreme Court in this instance was prior to its finding of unconstitutionality and not subsequent to it as in *Pipeline.* This explains the cautionary signaling of the case by the *Pipeline* Court. In *Fortson v. Morris,* 385 U.S. 231, 87 S.Ct. 446, 17 L.Ed.2d 330 (1966), the Court allowed the election of a governor by a malapportioned legislature to stand though the legislators could not be reelected under an unconstitutional apportionment plan. The case illustrates that a body can act in some capacities during a stay. The case of *Maryland Committee v. Tawes,* 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964), also held that legislators could not be reelected under an unconstitutional apportionment plan.

**3.** A process must be developed, however, to minimize the impairment of bankruptcy administration while avoiding violence to Article III of the Constitution. The following may suffice:

    A. All matters submitted for decision prior to June 28, 1982, should be decided by the Bankruptcy Court, unless

(1) Objection to jurisdiction was raised and overruled; or
(2) The matter is clearly beyond the summary jurisdiction of the Bankruptcy Court as this concept was developed under the old Bankruptcy Act.
In either of these two events, the matter, including the complete record, should be transferred to the District Court.

    B. On all matters coming before the Bankruptcy Court for determination after June 28, 1982:
(1) All matters peculiar to bankruptcy administration should be determined "as usual." Such matters probably include all that was considered within the summary jurisdiction of the Bankruptcy Court under the old Act.
(2) Borderline matters, including those where consent to jurisdiction may have been implied under Rule 915 from failure to object, shall only be tried upon the affirmative stipulation of the parties. Upon their refusal to so stipulate, the matter will be transferred.
(3) All matters which require the expanded jurisdiction of the Bankruptcy Court, including all proceedings which are plenary in nature, should be transferred to the District Court.