In re CUMBERLAND ENTERPRISES, INC., Northeast Enterprises, Inc., Northeast Enterprises of Columbus, Inc., Debtors.

Mark A. SCHNEIDER, Trustee, in Bankruptcy for Cumberland Enterprises, Inc., Northeast Enterprises, Inc., Northeast Enterprises of Columbus, Inc., and on behalf of himself as sole stockholder of The 1727 Corporation, Plaintiff,

v.

2–STAR FOODS, INC., The Chipper Foods Co., Inc., Gulf Coast Foods, Inc., Leon Moore, Moore & Associates, Inc., Venture Enterprises, Inc., Shoney's Inc., David Wachtel, William Tell, Inc., Wilson C. Tate, Sr., Harold F. Morris, Mark R. Moore, Charles Cox, Jr., Tate, Cox & Moore, A Partnership, Sequel II Corporation, James C. Smith, Seafood Distributors, Defendants.

Bankruptcy Nos. 381–01797, 382–00758 and 382–00757.
Adv. No. 382–0289.

United States Bankruptcy Court, M. D. Tennessee, Nashville Division.

Aug. 18, 1982.

Harry D. Lewis, Nashville, Tenn., for plaintiff/trustee.

Larry Stewart, Nashville, Tenn., for 2 Star Foods, Inc. and The Chipper Foods Co., Inc.

Kenneth Switzer, Nashville, Tenn., for David Wachtel and William Tell, Inc.

David B. Herbert, Nashville, Tenn., for Wilson C. Tate, Sr., Tate, Cox & Moore, and Sequel II Corp.

Russell H. Hippe, Jr., Nashville, Tenn., for Shoney's Inc.

Patrick L. Alexander, Nashville, Tenn., for Gulf Coast Foods, Inc., Leon Moore, Leon Moore & Associates, Inc. and Venture Enterprises, Inc.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The defendants' motions to dismiss raise two issues: (1) whether this adversary proceeding may continue after the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (U.S.1982); and, (2) whether the debtors' trustee may bring a shareholder's derivative action to recover the value of assets belonging to the debtors' wholly-owned subsidiary. For the reasons discussed below, the court holds that the bankruptcy court has jurisdiction to hear this adversary proceeding and the debtors' trustee is entitled to bring the derivative action.

On May 12, 1980, Cumberland Enterprises, Inc. filed a voluntary Chapter 7 petition in the United States Bankruptcy Court for the Southern District of Indiana. On May 24, 1980, Northeast Enterprises, Inc. and Northeast Enterprises of Columbus, Inc. filed Chapter 7 petitions with the United States Bankruptcy Court for the Southern District of Ohio. On May 5, 1981, the United States Bankruptcy Court for the Southern District of Indiana transferred the Cumberland Enterprises, Inc. case to the United States Bankruptcy Court for the Middle District of Tennessee. On February 1, 1982, the United States Bankruptcy Court for the Southern District of Ohio transferred the Northeast Enterprises, Inc. and Northeast Enterprises of Columbia, Inc. cases to the United States Bankruptcy Court for the Middle District of Tennessee. On April 12, 1982, this court ordered the consolidation of the cases of Cumberland Enterprises, Inc., Northeast Enterprises, Inc., and Northeast Enterprises of Columbus, Inc. ("the debtors"). Mark A. Schneider ("plaintiff") is the duly appointed, qualified and acting trustee in bankruptcy for the debtors.

On May 11, 1982, plaintiff filed a complaint against the defendants alleging conversion of assets, preferential transfers, fraudulent conveyances, and seeking the subordination of all claims held by the de-

fendants. The plaintiff alleged that the bankruptcy court has jurisdiction pursuant to 28 U.S.C.A. §§ 1471, 1481 (West Supp. 1982), as well as 11 U.S.C.A. § 105 (West 1979).[1] Several of the defendants moved to dismiss for lack of subject matter jurisdiction pursuant to Rule 915[2], Fed.R.Bankr.P., and Rule 12(b), Fed.R.Civ.P., made applicable herein by Rule 712(b), Fed.R.Bankr.P.

Defendants contend that the Supreme Court's holding in *Northern Pipeline* has the immediate effect to oust the bankruptcy court of jurisdiction to hear "traditional state created causes of action." A number of the defendants assert that the stay imposed by the Supreme Court (until October 4, 1982) allows the bankruptcy courts to only handle administrative and other matters not requiring the attention of an article III judge. Those defendants interpret the *Northern Pipeline* decision as a mandate to the bankruptcy court to revert to its pre-Code summary jurisdiction at this time. Other defendants admit that the effect of the stay imposed by the Supreme Court is unclear, but argue that immediate dismissal of this action would be judicially economical since this proceeding could then be brought in state court. It is plaintiff's position that *Northern Pipeline* holds the broad jurisdictional grant of § 241(a) of the Bankruptcy Act of 1978, 28 U.S.C.A. § 1471 (West Supp. 1982) unconstitutional. However, the plaintiff interprets the stay of the Court's judgment to impose no limitation on the bankruptcy court's exercise of the jurisdiction granted by § 1471 until October 4, 1982.

It is no surprise that this issue has already been brought to the attention of several bankruptcy courts. The first reported decision in which the existence of the *Northern Pipeline* decision was acknowledged was *California Steel Co. v. Dodds*, 21 B.R. 383 (Bankr.N.D.Ill.1982). In *California Steel*, the court denied the debtor's complaint to avoid a secured creditor's claim. In a footnote to the decision, Judge Hertz stated that "This decision is entered in compliance with the stay of enforcement until October 4, 1982 of the United States Supreme Court decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)." There is no indication in the opinion that an objection to the court's jurisdiction had been raised. However, it is apparent that the court wished to make clear it's determination that its jurisdiction was not affected by *Northern Pipeline.*

The next court to acknowledge *Northern Pipeline* was the United States Bankruptcy Court for the Eastern District of New York in *Pirrone v. Toboroff (In re Vaniman) International, Inc.*, 22 B.R. 166 (Bkrtcy.E.D.N.Y.1982). In a lengthy opinion, Judge Goetz dealt with many issues, including fraudulent conveyances, preferential transfers, breach of fiduciary duty by corporate directors, attorneys' fees, and equitable subordination of claims. Although there is no statement of an objection to the court's jurisdiction, the court addressed the basis of its jurisdiction subsequent to the Supreme Court's *Northern Pipeline* decision. The court found jurisdiction on three grounds: (1) the Supreme Court expressly denied retroactive application of its decision and

---

1. Because of the court's holding that 28 U.S.C.A. § 1471 (West Supp.1982) provides a jurisdictional basis for this lawsuit, it is unnecessary to reach the question whether 28 U.S.C.A. § 1481 (West Supp.1982) or 11 U.S.C.A. § 105 (West 1979) provides an independent basis for bankruptcy court jurisdiction in this case.

2. Rule 915 of Fed.R.Bankr.P. provides as follows:

(a) Waiver of Objection to Jurisdiction. Except as provided in Rule 112 and subject to Rule 928, a party waives objection to jurisdiction of an adversary proceeding or a contested matter and thereby consents to such jurisdiction if he does not make objection by a timely motion or answer, whichever is first served.

(b) Dismissal or Transfer. If an objection to the jurisdiction of an adversary proceeding, a contested matter, or a severable part of either, is sustained, the bankruptcy judge shall dismiss such proceeding, matter, or part thereof, or transfer it to the civil docket of the district court, as may be appropriate. On transfer pursuant to this rule, the proceeding, matter, or part thereof shall continue as if filed as a civil action in the district court on the date it was filed in the court of bankruptcy.

stayed its judgment until October 4, 1982; (2) the matters actually decided by the court were within the traditional competence of the bankruptcy court; and (3) the bankruptcy court had *in rem* jurisdiction to decide the validity of the second mortgage at issue in the case since it held the proceeds of the sale of the realty upon which the mortgage had been given.

In *Otero Mills, Inc. v. Security Bank & Trust*, 21 B.R. 645, 9 Bankr.Ct.Dec. 238 (Bkrtcy.D.N.M.1982), a creditor moved for rehearing and amendment of previous orders prohibiting the creditor from foreclosure against the debtor's property. The creditor based its motion on the *Northern Pipeline* decision, asserting that as of June 28, 1982, the bankruptcy court no longer had jurisdiction over the case. To determine the extent of its jurisdiction post *Northern Pipeline*, the bankruptcy court first concluded that the grant of jurisdiction in 28 U.S.C.A. § 1471 (West Supp.1982) and the grant of power in 11 U.S.C.A. § 105 (West 1979), would have enabled it, absent *Northern Pipeline*, to enjoin the creditor. The bankruptcy court then examined the effect of *Northern Pipeline* on the court's jurisdiction. The creditor argued that the stay entered in *Northern Pipeline* was a stay of the judgment in that case only and that the Court's declaration of the unconstitutionality of § 1471 was effective in other proceedings from June 28, 1982 forward. The bankruptcy court rejected the creditor's argument and held that the stay rendered the Court's determination of the unconstitutionality of § 1471 ineffective until October 4, 1982. Judge McFeeley reasoned as follows:

\* \* \* \* \* \*

However, *Northern Pipeline* declared § 241(a) of the Bankruptcy Reform Act of 1978 unconstitutional. Section 241(a) is the whole grant of power to administer the Bankruptcy Code, and if we find it ineffective as of June 28, 1982, the unavoidable effect would be that no court presently existing could administer the bankruptcy laws.

That being contradictory to our interpretation of the intention of the Court as expressed in the *Northern Pipeline* decision, we are compelled to read the stay provision of the opinion to mean exactly what it says: the judgment is stayed and the jurisdiction of the bankruptcy court, as that jurisdiction was intended by Congress, should continue to be exercised until October 4, 1982. Unless or until Congress takes action which indicates a change in the policy of expanded jurisdiction of this Court, our power to grant injunctive relief complained of by the Bank remains intact until October 4, 1982.

A similar result was obtained in *Hassett v. Ganz (In re O.P.M. Leasing Services, Inc.)*, 21 B.R. 986, 9 B.C.D. 335 (Bkrtcy.S.D. N.Y.1982), in which the plaintiff brought an action based upon the defendant's alleged "faithless conduct" while an employee of the debtor. The defendant moved to dismiss alleging that the jurisdictional grant of 28 U.S.C.A. § 1471 (West Supp.1982) was unconstitutional. Judge Lifland discussed the *Northern Pipeline* decision and concluded as follows:

\* \* \* \* \* \*

"However, it is not necessary at this time for the court to explore the justifications for and nuances and ramifications of this landmark decision because the Supreme Court therein expressly provided that my actions, as well as those of my brethren bankruptcy judges, must not at this time be governed by the holding of unconstitutionality in *Northern Pipeline*.

\* \* \* \* \* \*

... [T]he Court in *Northern Pipeline* has stayed all effect of its declaration of the unconstitutionality of Section 1471 in order to allow a smooth and orderly interim administration of the bankruptcy laws while Congress rectifies the asserted deficiency....

Accordingly, this court is bound by the stay imposed by the Court in *Northern Pipeline* and will therefore exercise the full breadth of its authority under Section 1471 during this interim period. To

grant defendant's motion to dismiss would fly in the face of that Supreme Court mandate directed at orderly administration and open the floodgates of the courthouse to a deluge of similar disruptive motions during this interim period. The defendant's motion to dismiss was denied without prejudice to allow the defendant to reassert the motion after October 4, 1982.

To date, the only bankruptcy court reaching a contrary result to those above was reversed by the district court. In *Armco, Inc. v. Cherry Pond Coal Company*, 21 B.R. 588, 9 Bankr.Ct.Dec. 224 (Bkrtcy.S.D.W.Va. 1982), the bankruptcy court ruled, apparently *sua sponte*, that it lacked jurisdiction to restrain the defendant from mining coal on the plaintiff's property. To determine the extent of the bankruptcy court's jurisdiction during the interim period from June 28, 1982 until October 4, 1982, the court analyzed the "precise wording of the plurality opinion and the precedents it cites." The court noted that in *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Supreme Court "distinguished the constitutionally infirm provisions of the Act from those provisions which could be upheld and authorized the Commission during the stay to function 'without interrupting enforcement of the provisions the Court sustains.'" *Cherry Pond Coal Co.*, 21 B.R. 588 at 225. The court further noted that "Similarly, in the voting rights cases, the Court has validated past actions of unconstitutionally constituted bodies but has not tolerated repetition during the stay of any unconstitutional activity." *Cherry Pond Coal Co.*, 21 B.R. 588 at 225. The court concluded that bankruptcy courts cannot exercise article III powers after June 27, 1982, and, accordingly, transferred the proceeding to the district court. In less than a week, the district court returned the case to the bankruptcy court. *Armco, Inc. v. Cherry Pond Coal Co.*, 21 B.R. 592 (D.C.S.D. W.Va. July 22, 1982). The district court held that the Supreme Court's determinations to apply its decision prospectively and to stay its judgment until October 4, 1982, "validated" the past actions and judgments of the bankruptcy courts under the 1978 Code and "extended this amnesty for some three additional months in order to afford Congress sufficient time to respond in the wake of the Court's decision." The court stressed that "nothing in the bare language of *Northern Pipeline* purports to restrict the extent to which a bankruptcy judge may exercise the pervasive grant of jurisdiction under section 241(a) during the interim period ending October 4, 1982." The district court found that the bankruptcy judge's reliance on *Buckley* was misplaced:

> ... [S]uch a view stems from a misreading of *Buckley* by failing to take due note that *Buckley* dealt not only with the question of the constitutional validity of the tribunal created to exercise a given power, as in *Northern Pipeline*, but also with the issue of the constitutionality of the power itself. When the quoted language from *Buckley* is considered in this light, it is seen that *Buckley* does not lend support to the conclusion that the jurisdiction of the bankruptcy court during the interim period has somehow been redefined and limited by the Court.

\*     \*     \*     \*     \*     \*

Unlike *Buckley*, the Court in *Northern Pipeline* did not deal with the question of whether the powers to be exercised by bankruptcy judges under the Bankruptcy Reform Act of 1978 were in and of themselves unconstitutional. Rather, the Court simply addressed the constitutional necessity that federal judicial power of the kind required to resolve the plenary action as presented in *Northern Pipeline* be exercised only by Art. III judges. The district court concluded that the bankruptcy judge's jurisdiction remains as granted in 28 U.S.C.A. § 1471 (West Supp. 1982) until October 4, 1982.

■ This court is persuaded by the above decisions and by a reading of *Northern Pipeline* that six justices of the Supreme Court concurred in the judgment that 28 U.S.C.A. § 1471 (West Supp.1982) is uncon-

stitutional in its entirety.[3] That judgment was then stayed by the Court until October 4, 1982. The stay of the Court's decision allows the bankruptcy courts to exercise § 1471 jurisdiction until October 4, 1982. To hold otherwise would cause the very result the Supreme Court explicitly sought to avoid—immediate chaos in the administration of bankruptcy cases. If we follow the defendants' suggestion that we read *Northern Pipeline* as if the stay of judgment were not applicable to this case, we reach the anamolous conclusion that no court has jurisdiction in bankruptcy cases because the only statutory source for such authority—§ 1471—is unavailable. The suggestion of some defendants that we dismiss at this time only "state created causes of action," while supported by some language in the *Northern Pipeline* opinion, misreads the conclusion of the plurality that § 1471 is unconstitutional *en toto* and cannot be saved by division of its parts and severance of the offending portions. Accordingly, the defendants' motions to dismiss for lack of subject matter jurisdiction are denied, without prejudice to the defendants' rights to raise this issue again after October 4, 1982.

Defendant Shoney's Inc. separately asserts that the court does not have jurisdiction over the action by the trustee as the sole shareholder of 1727 Corporation, a wholly-owned subsidiary of debtor Northeast Enterprises of Columbus, Inc.[4] Shoney's asserts that "ownership of stock by a debtor is not sufficient to confer bankruptcy court jurisdiction over corporate causes of action." Defendant Shoney's Inc. Supp. Brief, p. 3 July 19, 1982.

■ "Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case" and "any interest in property that the trustee recovers under section 543, 550, 553, or 723 of this title." 11 U.S.C.A. § 541(a)(1), (3) (West 1979). The legislative history of § 541 clearly indicates that causes of action are to be included within the broad language of the section. H.R.Rep. No.595, 95th Cong., 1st Sess. 367 (1977); S.Rep.No.989, 95th Cong., 2d Sess. 82 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. It is also clear that the bankruptcy court in which a parent corporation files bankruptcy acquires jurisdiction over the

---

**3.** This conclusion is required by virtue of the following passages from *Northern Pipeline*:

It is clear that, at the least, the new bankruptcy judges cannot constitutionally be vested with jurisdiction to decide this state law contract claim against Marathon. As part of a comprehensive restructuring of the bankruptcy laws, Congress has vested jurisdiction over this and all matters related to cases under title 11 in a single non-Art. III court, and has done so pursuant to a single statutory grant of jurisdiction. In these circumstances we cannot conclude that if Congress were aware that the grant of jurisdiction could not constitutionally encompass this and similar claims, it would simply remove the jurisdiction of the bankruptcy court over these matters, leaving the jurisdictional provision and adjudicatory structure intact with respect to other types of claims, and thus subject to Art. III constitutional challenge on a claim-by-claim basis. Indeed, we note that one of the express purposes of the Act was to ensure adjudication of all claims in a single forum and to avoid the delay and expense of jurisdictional disputes. See H.R.Rep.No.95-595, *supra*, p. 43-48; S.Rep.No.95-989, p. 17 (1978). Nor can we assume, as THE CHIEF JUSTICE suggests, *post*, at 2, that Congress'

choice would be to have this case "routed to the United States district court of which the bankruptcy court is an adjunct." We think that it is for Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Art. III, in the way that will best effectuate the legislative purpose.

*Northern Pipeline v. Marathon Pipe Line*, —— U.S. ——, —— n.40, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982).

Because I agree with the plurality that this grant of authority is not readily severable from the remaining grant of authority to bankruptcy courts under § 241(a), See *ante*, at 37 n.40, I concur in the judgment.

*Northern Pipeline* at ——, 102 S.Ct. at 2882 (Rehnquist, J., and O'Connor, J., concurring).

**4.** Shoney's Inc. initially asserts that plaintiff has failed to comply with Rule 23.1, Fed.R. Civ.P., made applicable in adversary proceedings by Rule 723.1, Fed.R.Bankr.P. The plaintiff indicated at the hearing on the motions to dismiss that he subsequently amended the complaint to conform with said rules. This aspect of Shoney's Inc.'s motion is, therefore, moot.

stock of a nondebtor subsidiary. *Stanton v. Sutton (In re Tonkawa Refining Co.)*, 502 F.2d 1341, 1343 (10th Cir. 1974). If a shareholder has a cause of action against unrelated third parties, that cause of action becomes property of the estate upon the filing of bankruptcy by the shareholder and that cause of action can generally be tried in the bankruptcy court. Defendant Shoney's does not explain why a different result applies where the shareholder's cause of action happens to be derivative of its wholly-owned subsidiary corporation. The court sees no relevant distinction. Accordingly, a cause of action initiated by the trustee of a debtor corporation as the sole shareholder of a subsidiary is within the bankruptcy court's jurisdiction. Shoney's Inc.'s motion to dismiss on this basis is denied.

The previous order of court suspending discovery in this case is vacated. A discovery conference shall be held in chambers on the 26th day of August, 1982 at 3:00 p.m. p.m.

IT IS SO ORDERED.