In re RAPCO FOAM, INC., Debtor.

Paul W. WEICHENTHAL, Plaintiff,

v.

RAPPERSWILL CORPORATION, Rapco Foam, Inc., Rapco Chemical, Inc., Reynolds Foam Insulation, Inc., and Isoschaum Foam Company, Ltd., Defendants.

Paul W. WEICHENTHAL, Plaintiff,

v.

SCIENTIFIC APPLICATIONS, INC. and R. Keene Christopher, Defendants.

FOREMOST INSURANCE COMPANY, Plaintiff,

v.

RAPCO FOAM, INC., Illinois Employers Insurance of Wassau, Admiral Insurance Company and Paul Weichenthal, Defendants.

Bankruptcy Nos. 81–01082, C–81–0481.

United States Bankruptcy Court, W. D. New York.

Aug. 19, 1982.

Louis S. Petrone, P. C., Utica, N. Y., for Scientific Applications.

Culley, Marks, Corbett, Tanenbaum, Reifsteck & Potter, Rochester, N. Y., for Illinois Employers.

Webster, Walz, Sullivan, Santoro & Clifford, Lamb, Webster, Walz, Donovan & Sullivan, Rochester, N. Y., for Foremost Ins.

Smith, Sovik, Kendrick, McAuliffe & Schwarzer, P. C., Syracuse, N. Y., for Rapperswill & Rapco Chemical.

Pheterson & Pheterson, Rochester, N. Y., for Paul Weichenthal.

Weidman, Williams, Jordan, Angeloff & Frank, Rochester, N. Y., for Reynolds Foam.

James DeVoy, Buffalo, N. Y., for Admiral Ins. Co.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The plaintiff, Foremost Insurance Company (Foremost), seeks summary judgment in this declaratory judgment action, in which it wishes to disclaim coverage under a policy issued to a Chapter 7 debtor, Rapco Foam, Inc. (Rapco), for injuries alleged by Paul Weichenthal in a separate products liability and negligence action against the debtor. The defendants to the declaratory judgment action are the insurers Illinois Employers Insurance of Wassau (Illinois) and Admiral Insurance Company (Admiral), an excess carrier, Rapco and Weichenthal. Foremost seeks a declaration that, as a matter of law, an exclusion clause in the insurance contract relieves Foremost of any obligation to defend and indemnify; and that the occurrence which would have triggered liability coverage did not arise during the period of Foremost's insurance policy. Foremost asks, in the alternative, that if the Court finds it liable under the policy, that the obligation to defend and indemnify be apportioned among all of the insurers and Rapco as a self-insurer, on a pro-rata basis in proportion to their respective periods of coverage. The defendants have cross moved for summary judgment asking for a determination that Foremost alone is liable for coverage under the policy.

The Foremost policy ran from September 8, 1976 through September 22, 1976. The activity giving rise to the Weichenthal action was the emission of urea-formaldehyde fumes from foam insulation manufactured by Rapco and installed in Weichenthal's residence about September 15, 1976. Foremost claims that the occurrence that would have triggered coverage under the insurance policy was not Mr. Weichenthal's exposure to the formaldehyde insulation but his manifestation of illness after the Foremost policy had lapsed. Weichenthal had experienced headaches and eye irritations immediately, but did not manifest serious symptoms until several months later during the periods of coverage by Illinois and Admiral.

The debtor, Rapco, filed a Chapter 11 proceeding for reorganization, later converted to a Chapter 7, in the U. S. Bankruptcy Court in South Carolina, sometime after the tort action by Weichenthal had been commenced in New York Supreme Court. Foremost had also commenced a declaratory judgment action similar to the present one in State Court. The automatic stay was lifted with regard to the tort action which was transferred to the Bankruptcy Court in the Western District of New York. Weichenthal, as a condition to the lifting of the stay, agreed only to seek damages from the proceeds of the insurance policies. The stay was not lifted with respect to the declaratory judgment action, and Foremost, instead, commenced this new action; serving by mail the summons on the attorneys who respectively represented Illinois and Admiral in the State action. The insurance companies, based on the service, challenged in their answer the jurisdiction of the Court over their person, while at the same time cross moving for summary judgment and raising substantive denials and affirmative defenses. Foremost asserts that the attorneys were authorized to accept process by virtue of their continuing representation of the insurers in the State action.

Illinois subsequently brought an adversary proceeding in Bankruptcy Court, South Carolina, in which it deposited its total remaining liability under its Rapco policy, asking that the parties be required to interplead and settle among themselves the rights to the money so deposited.

In its motion for summary judgment, Foremost asked the Court to declare it not liable for coverage under its policy of insurance to Rapco, but to find that liability for coverage arose during the periods of Illinois and Admiral's policies. The defendants, Illinois and Admiral, dispute that in personam jurisdiction was ever obtained over them, and they raised timely objections. Evidently, only Weichenthal and Rapco raised no objection to service, and Rapco never filed an answer in this action. Weichenthal as plaintiff in the liability action has only a contingent interest in the outcome of this case. A ruling by the Court without the insurers as parties would be futile. It is necessary that Foremost serve both Admiral and Illinois in a proper manner.

■ Service on the attorneys representing the defendants in another action, which was the method used by Foremost, is not one of the methods for serving a corporation under Fed.Rule Civ.Pro. 4(d), which has been incorporated in bankruptcy by Bankr. Rule 704(b). Neither is this method in compliance with the mailing provisions of Bankr.Rule 704(c)(3). That section permits service by mail on a corporation, to be sent to the attention of an officer, managing or general agent, or agent authorized by appointment or law to receive service of process. Both insurers have designated agents for service of process in their contract of insurance with Rapco for actions by the insured or a beneficiary under the policy. In fact, Foremost was advised by attorneys for Illinois and Admiral by letter after they received the process, that they were not authorized to receive it. Foremost cites as authority for the service made *U. S. v. Bosurgi*, 343 F.Supp. 815 (S.D.N.Y.1971). While under the facts of that case the Court found an implied authorization to accept process, the Court specified that if such an agency was to be implied, "it must be implied from all the circumstances accompanying the attorney's appointment which indicate the extent of authority the client intended to confer." Id. 818 (footnote omitted). Under the facts of the instant case, the circumstances accompanying the attorneys' appointment in the State action did not indicate they were authorized to represent the insurers in a separate action in a new forum. Therefore, Foremost does not have jurisdiction over Illinois and Admiral in this declaratory judgment action.

■ Illinois also raised an objection to the subject matter jurisdiction of this Court in its answer. It claims that the action has no connection to the Bankruptcy proceedings because the debtor has disclaimed an interest in the case, and Weichenthal will not seek to satisfy his tort claim from property of the estate in bankruptcy. In its memorandum, Illinois cites *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), asserting the Bankruptcy Court has no power to adjudicate this controversy.

In *Northern Pipeline*, the Supreme Court stayed until October 4, 1982, a judgment in which it found 28 U.S.C. § 1471 to be an unseverable and unconstitutionally broad grant of power to the Bankruptcy Court. The divided Court found that the Bankruptcy Court, as a non-Article III Court, did not have jurisdiction to adjudicate State created rights. The controversy in this case involves the interpretation of an insurance contract which requires the resolution of such applicable State created rights. The issue presented, therefore, is whether the Bankruptcy Court continues to exercise its powers under 28 U.S.C. 1471 over controversies related to Bankruptcy proceedings during the interim period between the *Northern Pipeline* decision and Congress's subsequent corrective action. *Northern Pipeline* imposed a limited stay on the judgment between June 28, 1982 and October 4, 1982 to permit Congress to reconstitute the Bankruptcy Courts without impairing the interim administration of the bankruptcy laws. Necessary to the resolution of this issue is whether the interim administration of bankruptcy law would permit resolution of the instant controversy, arising from State created rights.

Two recent cases have considered the effects of this stay and have reached opposite conclusions. In *In re Cherry Pond Coal Co.*, 21 B.R. 588, 9 Bankr.Ct.Dec. 224 (Bkrtcy.S. D.W.Va.1982), the Court citing *Buckley v. Valeo*, 424 U.S. 1, 141, 96 S.Ct. 612, 692, 46 L.Ed.2d 659 (1976), held that those powers of the Bankruptcy Court which Congress would have had the constitutional right to enact could continue during the interim, as if the jurisdiction granting statute had been severable. Those provisions, however, which were constitutionally infirm, (if severable), could not be carried on during the interim period. In the other case, *In re Otero Mills, Inc.*, 21 B.R. 645, 9 Bankr.Ct. Dec. 238 (Bkrtcy.D.N.M.1982), the court held that because of the stay by the Supreme Court, the bankruptcy courts could assume all jurisdiction that Congress intended it to have under 28 U.S.C. 1471, until October 4, 1982. The Court reasoned that the Congressional intent that all cases in bankruptcy be heard in a single forum was so pivotal that 28 U.S.C. 1471 was inseverable. The Supreme Court could not construe how Congress would reconstitute the courts on Congressional reconsideration. Therefore, all the bankruptcy powers would be in effect during the stay.

There was no majority in *Northern Pipeline* as to what powers Congress may constitutionally grant the Bankruptcy Court. The plurality, however, held that judges without life tenure and non-dimunition in salary rights could not adjudicate State created rights because this constituted a violation of the separation of powers and, thus, was an attack on an independent judiciary. The Supreme Court found the jurisdiction granting statute inseverable. Therefore, this Court declines to follow the *Cherry Pond Coal Co.* ruling because such a finding would burden the Bankruptcy Court with making a determination as to the constitutionality of a power grant that even a majority of the Supreme Court could not agree upon. The Supreme Court stayed the effect of its order in *Northern Pipeline* for practical reasons to permit the orderly administration of pending bankruptcy cases. The administration of pending cases is temporary and not subject to constitutional challenge. See *Palmore v. United States*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973), dealing with District of Columbia Judges whose powers had geographical limitations and *Gliddon Co. v. Zdanok*, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962), providing for a transition period for the then sitting judges. However, the stay in *Northern Pipeline* does not compel the Bankruptcy Court to continue all actions in which jurisdiction was permissible under 28 U.S.C. 1471 as in *In re Otero Mills, Inc.* (supra). The prospective nature of the Supreme Court ruling and the effect of the stay are for practical considerations. When 90% of a case has been tried, it would seem reasonable for the Court to complete the balance. Both justice and judicial economy dictate that the work of the parties and the court should not be disregarded where a case is close to winding up.

But this is not the case here, and it is not in the interests of judicial economy for the court to assume it has jurisdiction. The parties have raised a serious jurisdictional question. Whatever the decision of this court on substantive grounds, jurisdictional matters could and in all probability would be raised on appeal. The uncertainty of the law in this area could leave this case in litigation for years. The time is short in which Congress must act to reconstitute the bankruptcy courts or leave the entire field of commercial law in chaos. Congress after October 4, 1982, may give this Court the jurisdiction to complete this case or it may make this Court turn it over to another forum. While the Bankruptcy Code envisions the timely and efficient administration of the debtor's estate, it is in the interest of judicial economy to refrain from adjudicating this matter at this time since such abstention should not unduly delay these cases and the Court's time can be spent adjudicating the problems which are peculiarly within the nature of Bankruptcy.

In the meantime, if the parties wish, they may make formal application to have the cases remanded to the forum from whence they came.