In re OTERO MILLS, INC., Employer ID No. 85–0194848, Debtor.

OTERO MILLS, INC., Plaintiff,

v.

SECURITY BANK & TRUST, Defendant.

Bankruptcy No. 82–00217 M L.
Adv. No. 82–0373.

United States Bankruptcy Court,
D. New Mexico.

July 14, 1982.

Jennie Deden Behles, Albuquerque, N. M., for plaintiff.

Norman S. Thayer, Albuquerque, N. M., for defendant.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on the motion of Security Bank & Trust (the Bank) for amendment of this Court's order entered July 1, 1982. In that order the Court made permanent a temporary injunction which prohibited the Bank from moving to foreclose on any transcript of judgment obtained as a result of a default judgment awarded to the Bank against Charles J. Dugan (Dugan) in Otero County District Court.

### FACTUAL AND PROCEDURAL HISTORY

Dugan is the president, founder, and a major shareholder of the debtor, Otero Mills, Inc. The Bank's claim against Dugan arises from two notes which were delivered to the Bank as a result of two loans by the Bank to Otero Mills in 1979. The loans totalled $650,000.00 and Dugan executed personal guaranties to the Bank on both notes. Otero Mills failed to make the scheduled payments on these notes in March and April 1982, and the Bank filed suit against Dugan on April 23, 1982, in

Otero County (New Mexico) District Court to enforce the guaranties and collect on the notes. On May 27, 1982, the Bank served notice of its intent to apply for a default judgment in Otero County District Court and on May 28, 1982, Otero Mills moved to obtain a temporary restraining order to prohibit the Bank from applying for the default judgment. The hearing for the temporary restraining order was before United States Bankruptcy Judge Stewart Rose on May 28, 1982. Judge Rose denied the motion, but preserved all issues for the preliminary injunction hearing, which had been set for June 2, 1982. On June 1, 1982, the Bank obtained a default judgment against Dugan. After a hearing on June 2, 1982, the Bank was temporarily enjoined from proceeding on any writ of execution obtained as a result of the judgment of the Otero County District Court. This temporary injunction was entered on June 4, 1982, and specifically allowed for transcripting the Otero County District Court judgment against property owed by Dugan. It prohibited only actual foreclosure against Dugan's property. On July 1, 1982, pursuant to a memorandum opinion and order, this temporary injunction was made permanent. The Bank now moves for rehearing and amendment, alleging as grounds the opinion of the United States Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598, 1982. The Bank asserts that the United States Bankruptcy Court has no jurisdiction over this matter as of June 28, 1982.

## JURISDICTION OF THIS COURT, ABSENT *NORTHERN PIPELINE*, TO ISSUE INJUNCTION

There is no question that on June 27, 1982, this Court had the jurisdiction and authority to issue the injunction of which the Bank now complains. 28 U.S.C. § 1471 puts the exercise of jurisdiction given to the district courts for all cases under title 11 of the United States Code into the hands of the bankruptcy judge. Section 105 of the Bankruptcy Code itself gives the bankruptcy court the power to issue "any order,

process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). We will not repeat here the reasoning contained in the memorandum opinion entered on July 1, 1982, in this case as it addresses the Court's power to enjoin actions against third parties. We will add, however, that the legislative history of the Bankruptcy Reform Act of 1978 supports that conclusion. Indeed, the opinion in *Northern Pipeline* itself leaves no doubt that Congress intended the jurisdiction of the bankruptcy court to permit such injunctions. In the United States Senate hearings, the Act was represented to give the bankruptcy court:

> "... pervasive jurisdiction over all proceedings arising in or relating to bankruptcy cases.... This represents a major improvement over present law where the distinction between summary and plenary jurisdiction often results in wasteful litigation... 28 United States Code 1481 rounds out the power of a bankruptcy court by making clear that the court has all the powers of a court of equity, law, or admiralty.

124 Cong.Rec. S17424 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini).

This broad jurisdiction was also envisioned by the House of Representatives. Rep. Railsback, in the debate concerning bankruptcy judges as Article III judges, stated that without Article III judges in the bankruptcy court,

> The existing district courts would continue in their role as courts of bankruptcy with bankruptcy judges attached thereto as adjuncts. Jurisdiction in district courts sitting in bankruptcy would be extended to plenary proceedings where detriment to the bankrupt's estate can be shown. The plenary jurisdiction will be exercised by the bankruptcy judges to the extent authorized by rule or order of the District Court.

123 Cong.Rec. H11771 (daily ed. Oct. 28, 1977) (statement of Rep. Railsback).

In defining the scope of jurisdiction which it had to consider in *Northern Pipe-*

*line*, the United States Supreme Court found the grant of jurisdiction to the bankruptcy court to be so broad as to cover "claims that *may* effect the property of the estate once a petition has been filed. . . ." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co., supra*, at p. ——, 102 S.Ct. at 2862 (emphasis added). Indeed the Supreme Court found that Congress intended that all cases relating to a bankruptcy estate be heard in a single forum, and that point to be so pivoted that they held the jurisdiction objected to in *Northern Pipeline* to be unseverable from the entire jurisdictional scheme. *Id.*, at n. 40, 102 S.Ct. at 2880 n. 40 and concurring opinion at p. ——, 102 S.Ct. at 2881 (Justice Rehnquist concurring).

This Court believes that the Otero County District Court judgment obtained by the Bank in this case could do significant damage to the Otero Mills plan of reorganization, and we believe that a bankruptcy court's ability to prevent such an effect is the entire point of the broad jurisdictional grants of the Bankruptcy Reform Act of 1978. Indeed, had this Court heard the motion for the temporary restraining order on May 28, 1982, we would have granted the motion to prevent the entry of the default judgment. That judgment having been entered, we believe that Congress intended that the bankruptcy court should have power to mitigate the effects of such a judgment on the estate of a debtor to whatever extent is possible.

### THE EFFECT OF *NORTHERN PIPELINE* ON THE COURT'S JURISDICTION TO ISSUE THE INJUNCTION

It is certain that, in the face of the decision in *Northern Pipeline*, Congress must now take some action prior to October 4, 1982, to revitalize the Bankruptcy Code. Congress may decide that the extensive grant of jurisdiction embodied in the 1978 Act is not as important as was once thought; on the other hand, it may still be the opinion of Congress, as it is ours, that the idea of extended jurisdiction and a single forum lie at the heart of the Bankruptcy Reform Act of 1978.

The Bank argues that the Supreme Court's order staying the judgment until October 4, 1982, is not all-inclusive as to the jurisdiction which Congress intended this Court to have, and argues that the "decision" is prospective—effective from the decision date forward. The Bank further argues that only the judgment as to Northern Pipeline itself is stayed to give the Court continuing jurisdiction over that case. The Bank contends that the sentence "This limited stay will afford Congress an opportunity to reconstitute the bankruptcy courts . . . without impairing the interim administration of the bankruptcy laws, *Northern Pipeline Co. v. Marathon Pipe Line Co., supra* at ——, 102 S.Ct. at 2880, means that this Court's jurisdiction is limited to "administering the bankruptcy laws," and that that means proceeding only under Title 11. However, *Northern Pipeline* declared § 241(a) of the Bankruptcy Reform Act of 1978 unconstitutional. Section 241(a) is the whole grant of power to administer the Bankruptcy Code, and if we find it ineffective as of June 28, 1982, the unavoidable effect would be that no court presently existing could administer the bankruptcy laws.

■ That being contradictory to our interpretation of the intention of the Court as expressed in the *Northern Pipeline* decision, we are compelled to read the stay provision of the opinion to mean exactly what it says: the judgment is stayed and the jurisdiction of the bankruptcy court, as that jurisdiction was intended by Congress, should continue to be exercised until October 4, 1982. Unless or until Congress takes action which indicates a change in the policy of expanded jurisdiction of this Court, our power to grant injunctive relief complained of by the Bank remains intact until October 4, 1982.

Accordingly, we find that the Bank's motion for rehearing and amendment of judgment should be denied.

An appropriate order shall enter.