**In re LEWIS CARPET MILLS, INC., Debtor.**

**JOHN P. MAGUIRE & CO., INC., Plaintiff,**

v.

**DAVID ROSENTHAL ASSOCIATES, INC., Defendant.**

**Bankruptcy No. 81–00040R. Adv. No. 81–0086R.**

United States Bankruptcy Court, N. D. Georgia, Rome Division.

Sept. 27, 1982.

Ezra Cohen and Mary Grace Diehl, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for plaintiff.

Howard Jones, Calhoun, Ga., for defendant.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

This civil proceeding to collect accounts receivable was tried. The plaintiff, John P. Maguire & Co., Inc. ("Maguire") factored the accounts receivable of Lewis Carpet Mills, Inc. ("Lewis"), the debtor, before this Chapter 11 case commenced. The defendant, David Rosenthal Associates, Inc. ("Rosenthal") is a carpet distributor which, before Lewis' bankruptcy, purchased carpet from Lewis on open account. By virtue of its factoring agreement with Lewis, Maguire was assigned these accounts receivable and has the right to collect them.

Maguire asserts that Rosenthal is liable to it for $13,534.06, plus interest. Rosenthal virtually admits this indebtedness but raises certain defenses and claims offsets in an amount greater than the indebtedness asserted by Maguire.

Certain of Rosenthal's defenses were earlier overruled. These defenses are that Maguire is not the proper party in interest to maintain this action and that even if Maguire is, this action is not within the jurisdiction of this Court because it is not related to Lewis' bankruptcy case. These defenses were overruled in an order entered November 5, 1981 which denied Rosenthal's motion to dismiss and which is reported as *John P. Maguire & Co., Inc. v. David Rosenthal Associates, Inc.,* 15 B.R. 172 (Bkrtcy.N. D.Ga.1982). Nothing has been submitted that persuades this Court to reconsider its ruling on these points.

After trial, the question of lack of subject matter jurisdiction arose again, when the United States Supreme Court published its decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("Marathon Pipeline"). In *Marathon Pipeline,* the Supreme Court decided that it was unconstitutional for Congress to vest this Court with jurisdiction to determine cases like the one at bar.

■ But the Supreme Court declared that its decision would be applied prospectively and that its judgment would be stayed until October 4, 1982 to afford Congress an opportunity to reconstitute the Bankruptcy Courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws. Thus, until October 4, 1982 this Court may adjudicate the case before it. E.g. *Othero Mills, Inc. v. Security Bank Trust,* 21 B.R. 645, 9 BCD 238 (Bkrtcy.D.N. Mex.1982); *In re O.P.M. Leasing Services, Inc.,* 21 B.R. 986, 9 BCD 335 (Bkrtcy.S.D.N. Y.1982). Since this case was fully tried before the Supreme Court's decision in *Marathon Pipeline* and is now ready for deci-

sion, the Court should exercise its adjudicatory powers.

At trial Rosenthal sought to establish claims for sales commission, loss of value of inventory, and samples purchased within the year preceding Lewis' bankruptcy. Based on the following findings of fact and conclusions of law, this Court determines that these claims are not established and that judgment in favor of Maguire should be entered.

## FINDINGS OF FACT

Rosenthal purchased carpet from Lewis' manufacturing plant in Georgia for resale to retailers near Rosenthal's place of business in Connecticut. Rosenthal purchased carpet at a cost of about $155,000 during the nine months preceding the commencement of this bankruptcy case.

Lewis commenced this case by its voluntary Chapter 11 petition, filed January 28, 1981. Shortly thereafter, Lewis determined to cease its manufacturing and to liquidate its assets. This liquidation has taken place in this Chapter 11 case, the debtor remaining in possession.

Pursuant to the pre-bankruptcy factoring agreement between Maguire and Lewis, all of Lewis' accounts receivable were assigned to Maguire. Each of the accounts receivable was evidenced by an invoice issued by Lewis containing the terms of the sale and a legend giving notice that the invoice was assigned and payable to Maguire. Rosenthal has paid Maguire for all of the carpet purchased from Lewis except that represented by the invoices sued on by Maguire in this civil proceeding.

This civil proceeding is to collect $13,-534.06 as the amount due on seven partially paid invoices each of which is dated December 14, 1980 and on seven wholly unpaid invoices, each of which is dated January 7, 1982. These invoices apparently represent the last purchases made by Rosenthal from Lewis.

Rosenthal virtually admits that $13,534.06 is the amount due after deducting pay-

ments and uncontested credits [1] from the face amount of the invoices. Rosenthal's dispute is not that the face amount of the invoices does not reflect the agreed price or that the amount of payments was greater. Rather, Rosenthal asserts certain claims as offsets.

### A.

■ One claim is for certain commissions, totaling $3,031. Rosenthal asserts that it had a commission agreement with Lewis whereby Lewis would pay Rosenthal a commission on sales that Lewis made directly to retailers in Rosenthal's territory.

From the evidence, this Court cannot find that there was such a commission agreement. Lewis' commission agreements with distributors were generally in writing. There was no written commission agreement between Lewis and Rosenthal relating to sales of retailers. Nor does the evidence submitted by Rosenthal persuade this Court that there was such an agreement.

Moreover, there is no competent or persuasive evidence of sales by Lewis directly to retailers in Rosenthal's area. Thus, even if there were the commission agreement between Rosenthal and Lewis, there would be no basis to the claims for commissions.

### B.

■ A second claim by Rosenthal is for loss of value of inventory. Rosenthal asserts that when Lewis commenced this bankruptcy case, it had on hand inventory which Rosenthal had purchased from Lewis at a cost of $10,000. Rosenthal asserts that this inventory declined in value to $8,000 because of Lewis' discontinuance of its business.

This Court simply cannot find that Lewis ever expressly or impliedly agreed or warranted that it would stay in business. Moreover, there is no evidence as to whether the inventory on hand when the bankruptcy case commenced was inventory sold pursuant to those invoices on which Maguire is now suing.

### C.

■ A third claim is that Rosenthal is entitled to credit for certain samples purchased from Lewis. The carpet that Rosenthal purchased before this bankruptcy case commenced included samples of lines of carpet that Lewis was manufacturing. Rosenthal needed these samples to show to retailers to whom Rosenthal wished to sell carpet manufactured by Lewis. Rosenthal bought samples at a cost of $10,000 and paid for them before the issuance of the invoices sued upon in this civil proceeding.

There is no evidence of a written agreement between Lewis and Rosenthal with respect to credit for samples. Nor was there any practice or pattern between them with respect to credit for samples. Nor is there any evidence that, before its bankruptcy, Lewis ever discontinued a line within a year of its introduction. Rosenthal seeks to prove it is the custom and usage of the carpet industry for a manufacturer to allow credit for samples of a carpet line discontinued within a year of the purchase of the samples.

Rosenthal's evidence that such a credit is a custom and usage of the carpet industry is not sufficient to establish any particular credit policy as a term of the agreements between Lewis and Rosenthal. It is clear that no manufacturer includes such a credit policy in its invoices. And it is clear that no manufacturer automatically issues credits for samples on discontinuance of a line.

Rather, sample credits or other concessions are sometimes allowed by manufacturers if the distributors demand them and if they are necessary to preserve the good will of the distributor. Exactly what credits and concessions are allowed is negotiated between the manufacturer and the distributor. The manufacturer may seek to offer a

---

1. One small area of dispute is whether Rosenthal received a credit of $1,396.50 sought for defective carpet. Comparing Rosenthal's records of the amount due with Maguire's, it appears that the amount sued for by Maguire is adjusted downward in the approximate amount of those credits.

reduced price on the samples of a new carpet line. Or the manufacturer may offer full or partial credit depending on the length of time that the samples were used, the relation between the distributor and the manufacturer, and other factors.

### D.

Each of the invoices was issued in Georgia. Each evidenced a separate contract for the purchase of carpet. Each recites that it is payable net thirty days. Each was received by Rosenthal within the week of its issuance.

## CONCLUSIONS OF LAW

### A.

The claim for sales commissions cannot be allowed. The burden of proof to establish this claim is on Rosenthal. The evidence offered by Rosenthal was insufficient.

### B.

Likewise, the claim for loss of value of inventory cannot be allowed. The evidence was insufficient that Lewis agreed or warranted that loss of value from discontinuance of business or of a line would not occur.

To establish that a carpet manufacturer warrants to its distributors that it will stay in business, Rosenthal cites *Wear v. Farmers & Merchants Bank,* 606 P.2d 27 (Alaska 1980). In that case the Supreme Court of Alaska held that an insurance agent may offset against a note given to an insurance company commissions that he would have earned had the company stayed in business. In that case the insurance company did not pay a salary to its agents, but advanced them commission from sales of policies on which the premiums had not been paid. In return, the agents signed promissory notes and assigned as collateral for the notes commissions on future premiums. The insurance company would apply commissions, as earned, against the note. The insolvency of the insurance company cut off entirely the right of the agent to commissions on future payments. The Supreme Court of Alaska, acting contrary to other decisions throughout the United States, held that, in this case, in order to achieve substantial justice, an agreement by the insurance company to stay in business would be implied.

■ This Court need not, indeed cannot, debate the merits of *Wear* because *Wear* is based primarily on relations in the insurance industry and particularly the relation of insurance companies to their agents. The carpet industry offers different relations. A manufacturer of carpet does not take a security interest in carpet or expect payment from the proceeds of the specific carpet sold. Nor does the insolvency of the manufacturer render the carpet wholly worthless. Furthermore, insolvencies in the carpet industry are much more common than in insurance companies, which are regulated. There is no implied agreement by carpet manufacturers to remain in business.

Moreover, Rosenthal is precluded from asserting this claim against Maguire, which is an assignee of Lewis. The claims and defenses which can be raised against an assignee of an account arising out of a sale are limited by the Uniform Commercial Code, Ga.Code Ann. § 109A–9–318(1)[2]. By virtue of this section the rights of an assignee are subject to (a) any claims and defenses arising from the terms of the assigned account and (b) any claims and defenses accruing before the account debtor receives notification of the assignment.

■ The claim for loss of value of inventory does not arise from the terms of the accounts sued on in this civil proceedings. This is because there is no evidence that the

---

**2.** Ga.Code Ann. § 109A–9–318(1) provides:

Unless an account debtor had made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in 109A–9–206 the rights of an *assignee* are subject to

(a) All the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and

(b) Any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.

inventory on hand when this bankruptcy case commenced is that purchased on the accounts sued upon in this civil proceeding.

The claim for loss of value is one which, if recognized at all, is subject to *Ga.Code Ann.* § 109A–9–318(1)(b). It is a claim which clearly accrued after Rosenthal received notification of the assignment of the accounts sued upon in this case. Rosenthal received notification of the assignments no later than on receipt of the invoices bearing the legend notice of the assignment. Any loss of value of the inventory did not occur until after this bankruptcy case was commenced, which was after those invoices were received. *See, Seattle-First National Bank v. Oregon Pacific Industries, Inc.*, 262 Or. 578, 500 P.2d 1033, 11 U.C.C.Reptr. 270 (1972).

### C.

Finally, the claim for samples credit cannot be allowed. Rosenthal cannot show a right to samples credit by either a written agreement, a pattern or practice between it and Lewis, or industry usage and practice.

Indeed it appears that a showing of industry usage and practice might not be enough when there is no written provision with respect to the samples credit. To the extent that the agreement asserted by Rosenthal is the right to credit on the return of samples, the agreement can be construed as a contract for sale or return, within the meaning of the Uniform Commercial Code, *Ga.Code Ann.* § 109A–2–326. Such a contract is required by the statute of frauds to be in writing. In *Consolidated Foods Corp. v. Roland Foods, Inc.* 13 U.C.C.Repts. 245 (D.C.Super.Ct.1973), a distributor of meat was sued by his supplier for meat sold on open account. The distributor defended that it purchased the goods on a "guaranteed sale" basis. The distributor offered an affidavit that there was an oral agreement that the distributor could return any meat that could not be sold and that this was a trade custom in the food industry.

The Court held that the agreement alleged by the distributor was a sale or return contract. The Court said:

[the distributor], however attempts to skirt the above statute of frauds requirement by raising issues of trade custom and partial performance. As to trade custom, the court believes that even if the affidavit is accurate as to the common practice of food wholesalers selling their goods upon the understanding that the purchasing retailer may return the goods if he cannot resell them, such practice would not obviate the necessity for written evidence of a particular "or return" agreement.

Moreover, as with the claim of loss of value of inventory, Rosenthal is precluded by *Ga.Code Ann.* § 109A–9–318(1) from asserting this samples claim against Maguire. None of the invoices sued upon in this civil proceeding are for the purchase of samples. Thus, the samples claim can not arise from the terms of these assigned accounts. And, any right to a credit for samples did not accrue until after this bankruptcy case was commenced. This was after Rosenthal had notice of the assignment of the accounts sued upon.

### D.

From the foregoing it is clear that Maguire is entitled to recover the principal amount of $13,534.06. Maguire is also entitled to interest under Georgia Law. The relevant section is *Ga.Code Ann.* § 57–112, which sets forth the rate of interest on commercial accounts. It provides for interest at the rate of 1½% per month on that portion of a commercial account which has been due and payable for 30 days or more. The Court is informed that at that rate, interest on the principal amount would be $3,857.21. Therefore, judgment shall be entered in favor of Maguire and against Rosenthal in the amount of $13,534.06 principal, $3,857.21 interest, and cost.

So Ordered this 27 day of September, 1982 at Rome, Georgia.