In re DARTMOUTH HOUSE NURSING HOME, INC., Erlin Manor Nursing Home, Inc., St. John's Nursing Home, Inc.

The COMMONWEALTH OF MASSACHUSETTS By its DEPARTMENT OF PUBLIC WELFARE, Plaintiff, Appellant.

v.

DARTMOUTH HOUSE NURSING HOME, INC., Erlin Manor Nursing Home, Inc., St. John's Nursing Home, Inc., Defendants, Appellees.

Appeal No. 82–9057.

United States Bankruptcy Appellate Panel for the First Circuit.

June 15, 1983.

---

Frederick G. Fisher, Jr., C. Hall Swaim, Mark N. Polebaum, Hale & Dorr, Boston, Mass., for defendants, appellees.

Before VOTOLATO, Chief Judge, JOHNSON and GOODMAN, Bankruptcy Judges.

JOHNSON, Bankruptcy Judge.

The constitutionality of the jurisdictional grant to bankruptcy appellate panels has been questioned in this appeal.[1] The debtors have filed a motion to dismiss the appeal of the Massachusetts Department of Public Welfare[2] on the ground that the United States Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), divested the Bankruptcy Appellate Panel of jurisdiction. We reluctantly conclude that we are without jurisdiction to hear the appeal. 24 B.R. 256.

■ Preliminarily, we must address the argument of the Department of Public Welfare that if the panel's jurisdictional grant is unconstitutional, then the panel no longer exists and cannot act to grant the motion to dismiss. This contention is without merit. In *Chicot County Drainage District v. Baxter State Bank,* the United States Supreme Court stated:

> The lower federal courts are all courts of limited jurisdiction, that is, with only the jurisdiction which Congress has prescribed. But none the less they are courts with authority, when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdic-

Francis X. Bellotti, Atty. Gen., Stephen S. Ostrach, Asst. Atty. Gen., Boston, Mass., Jeffrey S. Ogilvie, Sp. Asst. Atty. Gen., Deputy Gen. Counsel, Brian G. Burns, Asst. Gen. Counsel, Dept. of Public Welfare, Boston, Mass., for plaintiff, appellant.

1. Pursuant to 28 U.S.C.A. § 2403(a) (1978), we certified to the United States Attorney General that this appeal questioned the constitutionality of a United States statute. Section 2403(a) provides:

> In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene

for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The Attorney General's office declined to intervene or to file a statement of interest.

2. The bankruptcy court entered an order permanently enjoining the Massachusetts Department of Public Welfare from setting off its claims against money owed to the debtors, Dartmouth House Nursing Home, Inc., Erlin Manor Nursing Home, Inc., and St. John's Nursing Home, Inc. Massachusetts appealed.

tion to entertain the cause and for this purpose to construe and apply the statute under which they are asked to act.

. . . .

Whatever the contention as to jurisdiction may be, whether it is that the boundaries of a valid statute have been transgressed, or that the statute itself is invalid, the question of jurisdiction is still one for judicial determination.

308 U.S. 371, 376–77, 60 S.Ct. 317, 319–20, 84 L.Ed. 329 (1940). The Court found this rule applicable to a district court sitting in bankruptcy with limited jurisdiction conferred by statute. *Id.* at 376, 60 S.Ct. at 319. Subsequent courts have applied the rule: "It is eminently clear that a federal court sitting in bankruptcy has the authority to pass upon its own jurisdiction. . . ." *Citibank, N.A. v. White Motor Corp. (In re White Motor Credit Corp.)*, 23 B.R. 276, 279 (N.D.Ohio 1982). As a federal bankruptcy court, this panel has authority to rule on its own jurisdiction.

The debtors contend that *Northern Pipeline* declared section 241(a) of the Bankruptcy Reform Act of 1978 unconstitutional in its entirety. Bankruptcy Reform Act of 1978 § 241(a), 28 U.S.C.A. §§ 1471–1482 (Supp.1983).[3] Section 241(a) contains 28 U.S.C.A. § 1482 (Supp.1983), the section of title 28 that grants jurisdiction to bankruptcy appellate panels.[4] The debtors assert, therefore, that this panel lacks jurisdiction after *Northern Pipeline*. Although we grant the motion to dismiss for lack of subject matter jurisdiction, we conclude that the Supreme Court did not declare

section 1482 unconstitutional in its *Northern Pipeline* decision. Instead, we hold that section 1482 unconstitutionally vests Article III judicial power in a non-Article III court. U.S. Const. art. III, § 1.

■ Although the Supreme Court's holding in *Northern Pipeline* is not clear, we conclude that the Court did not consider section 1482. In *Northern Pipeline,* the court reviewed the district court's finding that "the delegation of authority in *28 U.S.C. § 1471* to the bankruptcy judges to try cases which are otherwise relegated under the Constitution to Article III judges. . . . is an unconstitutional delegation of Article III judicial power to a non-tenured Article I court." *Marathon Pipeline Co. v. Northern Pipeline Construction Co.,* 12 B.R. 946, 956 (D.Minn.1981) (emphasis added). A plurality of the Supreme Court stated that "[t]he question presented is whether the assignment by Congress to bankruptcy judges of the jurisdiction granted in § 241(a) of the Bankruptcy Act of 1978, *28 U.S.C. § 1471* (1976 ed., Supp. III), violates Art. III of the Constitution." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 2862, 73 L.Ed.2d 598 (emphasis added). Indeed, the concurrence narrowed the issue even further to the constitutionality of the bankruptcy court's exercise of jurisdiction in the case before the Court. *Id.* 102 S.Ct. at 2880–82 (Rehnquist, J., O'Connor, J., concurring). Thus, it is clear that the issue appealed and the question presented to the court was the constitutionality of section 1471 and not the constitu-

---

**3.** Section 241(a) amends title 28 of the United States Code by adding chapter 90. Chapter 90 includes section 1471, jurisdiction of bankruptcy courts, sections 1472 to 1477, venue of bankruptcy cases and proceedings, sections 1478 to 1479, removal to bankruptcy courts, section 1480, jury trials, section 1481, powers of bankruptcy courts, and section 1482, jurisdiction of bankruptcy appellate panels.

**4.** Section 1482 provides:

(A) Panels designated under section 160(a) of this title shall have jurisdiction of appeals from all final judgments, orders, and decrees of bankruptcy courts.

(b) Panels designated under section 160(a) of this title shall have jurisdiction of appeals from interlocutory judgments, orders, and decrees of bankruptcy courts, but only by leave of the panel to which the appeal is taken. 28 U.S.C.A. § 1482 (Supp.1983). Although section 402(b) of the transitional provisions of the Bankruptcy Reform Act of 1978 gives section 241(a), and thus section 1482, an April 1, 1984 effective date, section 405(c)(2) provides that bankruptcy appellate panels shall exercise section 241(a) jurisdiction during the transition period. Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, §§ 402(b), 405(c)(2), 1978 U.S.Code Cong. & Ad.News (92 Stat. 2682, 2685).

tionality of all the sections added to title 28 by section 241(a) of the Bankruptcy Reform Act of 1978, including section 1482.

The plurality phrased its holding in broad terms, however:

We conclude that § 241(a) of the Bankruptcy Act of 1978 has impermissibly removed most, if not all, of "the essential attributes of the judicial power" from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts.... [T]he broad grant of jurisdiction to the bankruptcy courts contained in § 241(a) is unconstitutional....

*Id.* 102 S.Ct. at 2879–80 (4–2–3 decision). The plurality added that it would not sever the jurisdictional grant struck down in *Northern Pipeline* from the remaining grants of jurisdiction to the bankruptcy courts, which the court did not specifically consider. *Id.* 102 S.Ct. at 2880 n. 40. The concurring justices agreed that the "grant of authority to Bankruptcy Courts under § 241(a)" should be struck down in its entirety. *Id.* 102 S.Ct. at 2882 (Rehnquist, J., O'Connor, J., concurring).

This broad language has caused the appellee, along with several courts, to conclude that *Northern Pipeline* found all the sections of title 28 added by section 241(a) of the Bankruptcy Reform Act of 1978 unconstitutional. *See, e.g., Armco, Inc. v. Cherry Pond Coal Co. (In re Cherry Pond Coal Co.),* 21 B.R. 592, 592–93 (S.D.W.Va. 1982); *In re Motion to Dismiss: Constitutionality of Jurisdiction of the Bankruptcy Court,* 23 B.R. 334, 336 (Bkrtcy.N.D.Ga. 1982); *Hunter v. S.K. Austin Co. (In re Beck),* 22 B.R. 778, 779 (Bkrtcy.N.D.Ohio 1982); *Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.),* 21 B.R. 645, 647 (Bkrtcy.D.N.M.), *aff'd,* 25 B.R. 1018 (D.N.M.1982). After careful consideration of both the plurality and concurring opinions in *Northern Pipeline,* we conclude that the Supreme Court considered section 1471 only. *See, e.g., Meeker v. Livengood Real Estate Co. (In re Meeker),* 22 B.R. 745, 746

(S.D.Ohio 1982); *Wyandotte Industries v. Morton Machine Works, Inc. (In re First Hartford Corp.),* 25 B.R. 234, 235 (Bkrtcy.S.D.N.Y.1982); *Zinker v. Levy (In re M.J.S. Apparel, Inc.),* 22 B.R. 736, 737 (Bkrtcy.E.D.N.Y.1982); *Schneider v. 2-Star Foods, Inc. (In re Cumberland Enterprises, Inc.),* 22 B.R. 626, 630–31 (Bkrtcy.M.D.Tenn.1982). The Court did not declare section 1482 unconstitutional.

We reach this conclusion for two reasons. First, the language of both the plurality and concurring opinions, though broad, does not encompass the jurisdiction of bankruptcy appellate panels, but focuses entirely on the jurisdiction of bankruptcy courts. The plurality concluded that the broad grant of jurisdiction to "bankruptcy courts" was unconstitutional and that the " 'adjunct bankruptcy courts' " were a facade. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 2879–80, 73 L.Ed.2d 598 (1982). The plurality's discussion of severability clearly indicates that section 1482 was not at issue:

It is clear that, at the least, the new bankruptcy judges cannot constitutionally be vested with jurisdiction to decide this state-law contract claim against Marathon. As part of a comprehensive restructuring of the bankruptcy laws, Congress has vested jurisdiction over *this and all matters related to cases under title 11* in a single non-Art. III court, and has done so pursuant to a *single statutory grant of jurisdiction.* In these circumstances we cannot conclude that if Congress were aware that the grant of jurisdiction could not constitutionally encompass *this and similar claims,* it would simply remove the jurisdiction of the bankruptcy court over these matters, leaving the jurisdictional provision and adjudicatory structure intact with respect to other types of claims, and thus subject to Art. III constitutional challenge *on a claim-by-claim* basis.... We think that it is for Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Art. III, in the way that will best effectuate the legislative purpose.

*Id.* 102 S.Ct. at 2880 n. 40 (emphasis added). Thus, the plurality found that it could not sever the unconstitutional grant of jurisdiction to the bankruptcy courts over the state law contract claims at issue in *Northern Pipeline* from the bankruptcy courts' possibly constitutional jurisdiction over other types of claims and, therefore, that the entire grant of jurisdiction to the bankruptcy courts under section 1471 must be held unconstitutional. *See Rockwell International Corp. v. White Motor Corp. (In re White Motor Corp.),* 24 B.R. 200, 203 (N.D. Ohio 1982); *Schneider v. 2-Star Foods, Inc. (In re Cumberland Enterprises, Inc.),* 22 B.R. 626, 630–31 (Bkrtcy.M.D.Tenn.1982).[5]

The language of the concurrence also focused on the jurisdiction given to bankruptcy courts by section 1471. In fact, the concurrence would limit the holding even further to find unconstitutional only the jurisdictional grant that allowed the bankruptcy court to act in the case before the Court. *Northern Pipeline,* 102 S.Ct. at 2882. The concurrence agreed, however, that the jurisdictional grant at issue could not be severed from the "remaining grant of authority to Bankruptcy Courts." *Id.* Given the concurring justices' refusal to condone the plurality's broad statement of the issue, the justices certainly would not have concurred in an opinion finding section 1482, a section definitely not at issue, unconstitutional. *See id.* 102 S.Ct. at 2880–82.

Secondly, in concluding that the Supreme Court did not rule on section 1482, we note, as did the concurrence, the court's long-standing practice of " 'never [anticipating] a question of constitutional law in advance of the necessity of deciding it . . . [and never formulating] a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' " *Id.* 102 S.Ct. at 2881 (quoting *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4

L.Ed.2d 524 (1960)). As acknowledged by the plurality, the question presented to the Court was the constitutionality of the jurisdiction granted to bankruptcy judges by section 1471. *Id.* 102 S.Ct. at 2862. We conclude that the court limited its holding to this question.[6]

■ Our conclusion that the Supreme Court did not consider section 1482 in *Northern Pipeline* does not end our inquiry. We must decide whether the exercise of section 1482 jurisdiction by bankruptcy judges sitting on bankruptcy appellate panels violates Article III of the United States constitution.

Section one of Article III provides:

The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services a Compensation, which shall not be diminished during their Continuance in Office.

As stated by the Supreme Court in *Northern Pipeline,* "[t]he inexorable command of this provision is clear and definite: the judicial power of the United States must be exercised by courts having the attributes prescribed in Art. III." *Id.* 102 S.Ct. at 2865. The essential Article III attributes which must be possessed by judges exercising the judicial power of the United States are life tenure and protection against salary diminution. *Id.* These requirements were placed in the Constitution as institutional protections to guarantee an independent judiciary. *Id.* 102 S.Ct. at 2866. The framers recognized that "control over tenure and compensation of judges is incompatible with a truly independent judiciary, free of im-

---

**5.** We express no opinion on whether *Northern Pipeline* held section 1471 unconstitutional in its entirety or whether the Court limited its holding to section 1471(c). For decisions concluding that the Supreme Court did not invalidate subsections (a) and (b) of section 1471, see *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, 260 (6th Cir.1983); *First National Bank v.*

*Hansen (In re Hansen),* 702 F.2d 728, 10 B.C.D. 280, 280 (8th Cir.1983); *Braniff Airways, Inc. v. Civil Aeronautics Board (In re Braniff Airways, Inc.),* 700 F.2d 214, 215 (5th Cir.1983).

**6.** We express no opinion on the effect of *Northern Pipeline* on sections 1472–1481.

proper influence from other forces within government." *United States v. Will,* 449 U.S. 200, 218, 101 S.Ct. 471, 482, 66 L.Ed.2d 392 (1980) (discussing English statute). These provisions also promote public confidence in our judicial system, attract qualified judges, and promote judicial individualism. *Northern Pipeline,* 102 S.Ct. at 2865 n. 10. Thus we must consider whether bankruptcy judges sitting on bankruptcy appellate panels are Article III judges and, if not, whether their Article I status violates Article III's command that the judicial power of the United States must be vested in Article III courts.

Bankruptcy appellate panels did not exist prior to the enactment of the Bankruptcy Reform Act of 1978. Under the Reform Act, appeals from judgments, orders, and decrees of bankruptcy judges shall be heard by a panel of bankruptcy judges if the circuit council of a circuit so orders. Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 405(c)(1)(A), 1978 U.S.Code Cong. & Ad.News (92 Stat. 2685). During the transition period before the Act takes full effect on April 1, 1984, the procedure for the appointment of appellate panels is the same as the post effective date procedure under 28 U.S.C.A. § 160 (Supp.1983). *Id.* Section 160 allows the chief judge of each circuit to designate panels of bankruptcy judges to hear appeals from bankruptcy courts if the circuit council of the circuit orders application of the section to a district within the circuit.[7]

Once appointed, each bankruptcy appellate panel consists of three bankruptcy judges. Bankruptcy judges hold office for a term of 14 years. 28 U.S.C.A. § 153(a) (Supp.1983).[8] The judicial council of the circuit can remove them during their term "for incompetency, misconduct, neglect of duty, or physical or mental disability." 28 U.S.C.A. § 153(b) (Supp.1983). Salaries of bankruptcy judges are subject to adjustment under the Federal Salary Act of 1967. 28 U.S.C.A. § 154 (Supp.1983).[9] Appointment to an appellate panel does not affect a bankruptcy judge's term of office or compensation.

On February 28, 1980, the Circuit Council for the First Circuit ordered application of section 160 to the districts of Maine, Massachusetts, New Hampshire, and Rhode Island to appeals filed after March 1, 1980. Circuit Council for First Circuit, Minutes for Feb. 28, 1980. At the same time, the council approved the order of Chief Judge Coffin appointing bankruptcy judges to the Bankruptcy Appeal Panels for the First Circuit. *See* 1st Cir., Order Establishing Bankruptcy Appeal Panels for First Circuit (Feb. 28, 1980); *see also* 1st Cir., Order Establishing Bankruptcy Appeal Panels for First Circuit (Jan. 22, 1982). Obviously the bankruptcy judges on this panel are not Article III judges: they do not hold office during good behaviour and their salaries are not protected from diminution during their continuance in office. *See Northern*

---

**7.** Section 160 provides in full:

(a) If the circuit council of a circuit orders application of this section to a district within such circuit, the chief judge of each circuit shall designate panels of three bankruptcy judges to hear appeals from judgments, orders, and decrees of the bankruptcy court of the United States for such district. Except as provided in section 293(e) of this title, a panel shall be composed only of bankruptcy judges for districts located in the circuit in which the appeal arises. The chief judge shall designate a sufficient number of such panels so that appeals may be heard and disposed of expeditiously.

(b) A panel designated under subsection (a) of this section may not hear an appeal from a judgment, order, or decree entered by a member of the panel.

(c) When hearing an appeal, a panel designated under subsection (a) of this section shall sit at a place convenient to the parties to the appeal.

Bankruptcy appellate panels exist in the First and Ninth Circuits only.

**8.** During the transition period, the terms of bankruptcy judges are determined by section 404(b) of the 1978 Act. Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 404(b), 1978 U.S.Code Cong. & Ad.News (92 Stat. 2683).

**9.** During the transition period, the salaries of bankruptcy judges are determined by section 404(f) of the 1978 Act. Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 404(f), 1978 U.S.Code Cong. & Ad.News (92 Stat. 2684).

*Pipeline,* 102 S.Ct. at 2866 (bankruptcy judges not Article III judges).[10]

The question remains whether this statutory scheme violates Article III's command that the judicial power of the United States must be vested in Article III courts. We conclude that it does. Under section 1482, bankruptcy appellate panels have jurisdiction to hear appeals from judgments, orders, and decrees of bankruptcy courts.[11] Prior to the expiration of the *Northern Pipeline* stay on December 24, 1982, bankruptcy courts retained jurisdiction over "all civil proceedings arising under title 11 or arising in or related to cases under title 11." [12]  28 U.S.C.A. § 1471(b)(c) (Supp. 1983).[13] Thus, under section 1482, bankruptcy appellate panels hear appeals of the same broad range of issues that section 1471 allowed bankruptcy courts to hear prior to December 25, the effective date of the Supreme Court's decision in *Northern Pipeline.*[14]

In *Northern Pipeline,* the Supreme Court ruled that Congress could not constitutionally establish non-Article III courts to exercise jurisdiction over the wide range of issues encompassed by section 1471.  102 S.Ct. at 2874. It is obvious that if Congress cannot constitutionally establish non-Article III courts to exercise jurisdiction over the wide range of issues encompassed by section 1471 at the trial level, then it cannot establish non-Article III courts to hear the same issues at the appellate level. Appellate courts must have the judicial independence, integrity, quality, and individualism promoted by Article III.

We reluctantly conclude that section 1482 is unconstitutional because it "impermissibly remove[s] most, if not all, of 'the essential attributes of the judicial power' from the Art. III district court, and [vests] those attributes in a non-Art. III [appellate court]." *Id.* 102 S.Ct. at 2879–80.[15]

The appeal of the Commonwealth of Massachusetts is dismissed.

## APPENDIX

## JUDICIAL COUNCIL OF THE NINTH CIRCUIT

Order Establishing Appellate Review Procedures in Bankruptcy Cases

IT IS ORDERED that, at such time that the stay expires and judgment is filed by the United States Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982) (*Marathon* ), appellate review of bankruptcy cases shall be as follows:

December 24 orders and judgments are deemed orders or judgments of the district courts and, therefore, cannot be reviewed by bankruptcy appellate panels acting under section 1482.  *Id.*

10.  In his article on bankruptcy appellate panels, Bankruptcy Judge Lloyd George calls "the utilization of article I trial judges as appellate judges" one of the "[t]hree major weaknesses in the bankruptcy appellate panel experiment." George, *The Bankruptcy Appellate Panels: An Unfinished Experiment,* 1982 B.Y.U.L.Rev. 205, 217.

11.  For the full text of section 1482, see *supra* note 4.

12.  This panel has been hearing appeals from judgments and orders entered by bankruptcy judges prior to the expiration of the *Northern Pipeline* stay on December 25, 1982, only. We have been hearing these appeals pursuant to a memorandum from the Administrative Office of the United States Courts stating that we may adjudicate such appeals but that we "may perform no function in respect to any orders or judgments entered by bankruptcy judges after December 24." Memorandum from Milner Benedict to Dana H. Gallup (Dec. 15, 1982). The Administrative Office reasons that post-

13.  During the transition period, the jurisdiction of bankruptcy courts is determined by section 405(b) of the 1978 Act.  Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 405(b), 1978 U.S.Code Cong. & Ad.News (92 Stat. 2685).

14.  The *Northern Pipeline* stay does not affect this panel's jurisdiction because it applied to the jurisdiction of the bankruptcy courts under section 1471 only.

15.  We have recently been furnished with a copy of the order set forth in the appendix entered by the Judicial Council of the Ninth Circuit relating to appellate review of bankruptcy cases.  This Circuit has entered no such order and we, of course, express no opinion as to the effect of the order.

(1) The bankruptcy appellate panels shall consider and resolve all appeals in which the order or judgment to be reviewed has been entered by the bankruptcy judge before the filing of judgment in *Marathon.*

(2) The bankruptcy appellate panels shall not consider or resolve any appeals in which the order or judgment to be reviewed is entered by the bankruptcy judge after the filing of judgment in *Marathon.*

(3) Appeals from orders, judgments, proposed orders, and proposed judgments entered or lodged by the bankruptcy judge after the filing of judgment in *Marathon* shall be before a district judge in the manner provided by the local bankruptcy reference rule of the district.

(4) Appeals from all judgments and orders of district judges in all cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 shall be to the Court of Appeals pursuant to Section 405(c) of the Bankruptcy Act of 1978, P.L. 95–598, 92 Stat. 2549.

>
> FOR THE JUDICIAL COUNCIL:
> /s/ James R. Browning
> James R. Browning
> Chief Judge

3385e

DEC 28 1982

VOTOLATO, Chief Judge, concurring in the result.

The Supreme Court in *Northern Pipeline* held that "§ 241(a) of the Bankruptcy Act of 1978 has impermissibly removed most, if not all, of 'the essential attributes of the judicial power' from the Art. III district court, and has vested those attributes in a non-Art. III adjunct." *Northern Pipeline*

*Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 2879–80, 73 L.Ed.2d 598 (1982). I agree with the conclusion of the majority of this Panel to the extent that "if Congress cannot constitutionally establish non-Article III courts to exercise jurisdiction over the wide range of issues encompassed by [28 U.S.C.] section 1471 at the trial level, then it cannot establish non-Article III courts to hear the same issues at the appellate level." Majority Opinion at 62. Accordingly, I concur in the majority's conclusion as to the Panel's lack of jurisdiction. I write separately because I disagree with the untenable result of the majority opinion: dismissal not on the merits but on purely technical grounds of all other appeals pending before this Panel.

For the reasons given in this concurrence, including the lack of uniformity prevailing throughout the bankruptcy system, and the likely consequences of the action which we take here, I would have preferred to stay this order, pending review by the Court of Appeals for the First Circuit.[1] However, the majority has chosen not to issue a stay. Accordingly, I feel compelled to write separately, to state the reasons why a stay is imperative where an order has been issued by a Panel whose very existence has been questioned, and where other appellants with cases pending before this Panel presumably will find their cases summarily dismissed.

The majority is undoubtedly correct in stating the general proposition that a federal court has authority to rule on its own jurisdiction. However, those cases cited by the majority involve courts which have not been stripped of all jurisdiction, and deal

---

**1.** Certain of the jurisdictional issues discussed in this concurrence were raised during oral argument by appellant Massachusetts Department of Public Welfare. Because this proceeding involves novel questions of first impression, of obviously critical significance to taxpayers as well as other appellants of pre-December 24, 1982 orders, and of importance to bankruptcy practice in general, it appears certain that the Commonwealth will appeal our order to the Court of Appeals for the First Circuit.

Mindful of the possibility, however unlikely, that this order may not be appealed, and seriously concerned with the result should our order become final at the Bankruptcy Appellate Panel level, I sought, but in vain, to locate a method or vehicle by which to ensure that the First Circuit Court of Appeals would be able to provide appellate review of this matter on the merits. Not only has my research failed to produce any positive authority for such action—all that we have found on the subject militates against that idea.

only with whether said courts do or do not have jurisdiction to determine a particular cause. None of the cases addresses the issue of the existence of the court whose jurisdiction is being questioned; and the appellant's contention that a court with no legal status whatsoever is powerless to grant a motion to dismiss, cannot easily be disregarded. The very uncertainty as to whether this Panel continues to exist and, if so, what authority it possesses, I feel, lends support to the view that a stay should be issued until the Court of Appeals for the First Circuit decides the jurisdictional issues raised within this proceeding.[2] A stay would protect appellants against dismissal of their cases, without a hearing on the merits, by a tribunal that probably no longer exists. The right to appeal an order dismissing an appeal for lack of jurisdiction hardly seems to be the type of review contemplated by Congress or by the Circuit Council for the First Circuit in establishing this Panel. Thus, if this Panel ceases to function, appellants in pending cases may well be denied any meaningful appellate review. With a stay or our order, however, whether this decision is reversed or affirmed, or whether legislative action is taken which authorizes the continuance of this Panel, then appellants of pre-December 25 orders and judgments will not have been deprived of review of their cases on the merits.

It should also be kept in mind that there are two Bankruptcy Appellate Panels in the First Circuit, and that the Panel which hears appeals from orders and judgments of Maine and Rhode Island bankruptcy courts continues to adjudicate pending appeals. Similarly, the Ninth Circuit Bankruptcy Appellate Panels are conducting business as usual under a December 28, 1982 order entered by the Judicial Council for that Circuit.[3] A stay would avoid the anomalous situation in which appeals from Maine and Rhode Island bankruptcy courts continue to

---

**2.** One bankruptcy court which found that it lacked subject matter jurisdiction after *Northern Pipeline* concluded that the "exercise of jurisdiction when none exists would ... do catastrophic and irreparable harm to those who act in reliance upon the court's orders and judgments." The court dismissed the complaint before it, but stayed the order pending appeal, and certified to the district court that the circumstances required immediate review. *Gillman v. Preston Family Inv. Co. (In re Richardson),* 27 B.R. 407, 427, 10 B.C.D. 39, 53 (Bkrtcy.D.Utah 1983), *vacated and remanded,* 27 B.R. 962, 10 B.C.D. 182 (D.Utah 1983).

Another bankruptcy judge concluded that after the expiration of the stay in *Northern Pipeline,* "neither this Court nor I as one of its judges may well have any existence or jurisdiction independent of the District Court's [Emergency] Rule." The judge also concluded that he had no "power to pass on the validity of the orders of the District Court." *Lipman Bros., Inc. v. Lipman (In re Lipman Bros., Inc.),* 27 B.R. 529, 529, 530 (Bkrtcy.D.Mass.1983). If this Bankruptcy Appellate Panel were to apply this reasoning to appellate panels, we would undoubtedly conclude that we may well have no "existence or jurisdiction." Whereas the Emergency Rule provides for the continued operation of bankruptcy courts, it not only does not provide for appellate panels, but states explicitly that "bankruptcy judges may not conduct ... an appeal from a judgment, order, decree, or decision of a United States bankruptcy judge...." Rule § (d)(1)(C).

Appellant contends that if this Panel no longer exists as a constitutionally authorized tribunal, it lacks even the authority to dismiss pending motions. I believe that such an argument, although novel, is not without merit, and that the power to authorize—or reauthorize—such panels lies with the Court of Appeals. *See infra* note 3 and appendix (Ninth Circuit order establishing bankruptcy appellate review procedures after *Northern Pipeline* ).

**3.** On December 28, 1982 the Judicial Council of the Ninth Circuit entered an "Order Establishing Appellate Review Procedures in Bankruptcy Cases" in the post-*Northern Pipeline* period. The order provides in pertinent part:

(1) The bankruptcy appellate panels shall consider and resolve all appeals in which the order or judgment to be reviewed has been entered by the bankruptcy judge before the filing of judgment in *Marathon.*

By this action, Bankruptcy Appellate Panels in the Ninth Circuit are authorized to adjudicate appeals of orders and judgments of bankruptcy judges entered on or before December 24, 1982. A similar order by the Circuit Council for the First Circuit would provide a method for preserving the rights of parties with appeals pending before this Panel.

The Ninth Circuit order enabling Bankruptcy Appellate Panels to adjudicate appeals of pre-December 25 orders and judgments is reprinted in full in the appendix to this concurring opinion.

be heard by an appellate panel, while appeals from Massachusetts and New Hampshire bankruptcy courts are dismissed for lack of jurisdiction by a panel which was created simultaneously and with identical statutory and judicial grants of authority.

The rationale of the Circuit Council for the First Circuit in promulgating the Emergency Rule was to ensure that in this "highly unusual set of circumstances" the bankruptcy system would continue to function. Order (December 22, 1982). These exceptional circumstances and the general confusion in the wake of *Northern Pipeline*[4] have caused other courts to stay their orders and judgments pending appeal.[5] Given the equally unusual circumstances that currently exist with respect to appellate panels, a stay of our order, even in the absence of action by the Circuit Council for the First Circuit, would permit this Panel to continue to function.[6]

**4.** The uncertainty and confusion emanating from the *Northern Pipeline* decision are apparent from the cases cited by the majority in dismissing the instant appeal. *See* Majority Opinion at 65 (citation of cases holding that *Northern Pipeline* invalidated 28 U.S.C. §§ 1471–1482); *id.* at 65 (citation of cases holding that Supreme Court considered only § 1471); *id.* at 65 n. 5 (citation of cases holding that Supreme Court did not invalidate § 1471 (a) and (b)). *See also Moody v. Martin,* 27 B.R. 991 (W.D.Wis.1983) (bankruptcy judge who concluded he retained no power after *Northern Pipeline* ordered by district court to exercise jurisdiction); *Walter E. Heller and Co. Southeast, Inc. v. Matlock Trailer Corp. (In re Matlock Trailer Corp.),* 27 B.R. 318, 10 B.C.D. 372 (M.D.Tenn.1983) (district judge rejected conclusion of two bankruptcy judges that *Northern Pipeline* deprived bankruptcy courts of subject matter jurisdiction, but held invalid Emergency Rule provision for across-the-board referral of cases to bankruptcy judges); *Alithochrome Corp. v. Provident Mut. Life Ins. Co. (In re Alithochrome Corp.),* 28 B.R. 311 (Bkrtcy.S.D.N.Y.1983) (*Northern Pipeline* has no effect on summary jurisdiction of bankruptcy courts); *Still v. First Bank (In re Jorges Carpet Mills, Inc.),* 27 B.R. 333, 10 B.C.D. 1 (Bkrtcy.E.D.Tenn.1983) (neither district court nor bankruptcy court retains jurisdiction over dispute involving property not in constructive possession of court); *Kay Grose Rentals v. Johnson (In re Johnson),* 26 B.R. 530, 10 B.C.D. 8 (Bkrtcy.S.D.Ohio 1983) (although 28 U.S.C. § 1471 held unconstitutional, bankruptcy courts retain power to determine dischargeability of debts); *Docter v. Gleicher (In re Stillman),* 26 B.R. 834, 10 B.C.D. 5 (Bkrtcy.D.Md. 1983) (bankruptcy courts divested of all jurisdiction by *Northern Pipeline,* must follow Emergency Rule to avoid judicial anarchy); *Stonitsch v. Strick Lease, Inc. (In re Isis Foods, Inc.),* 26 B.R. 122, 9 B.C.D. 1291 (Bkrtcy.W.D. Mo.1983) (action to recover preference inherently within bankruptcy court jurisdiction and not affected by *Northern Pipeline*); *Winters Nat'l Bank & Trust Co. v. Schear Group (In re Schear Realty & Inv. Co., Inc.),* 25 B.R. 463, 9 B.C.D. 1210 (Bkrtcy.S.D.Ohio 1982) (neither district courts nor bankruptcy courts have jurisdiction over state law causes of action involving nondebtors in bankruptcy court; judges exercising fictional jurisdiction not immune from civil liability).

Given the variety of interpretations of the implications of both *Northern Pipeline* and the Emergency Rule which was adopted as an interim measure until Congress acts, the following statement by the Judicial Conference of the United States is particularly puzzling:

There is no present crisis in the operation of the bankruptcy court system. Members of the Judicial Conference of the United States unanimously agree that the Model Rule for the Continued Operation of the Bankruptcy Court System is working well.

Statement of the Judicial Conference (March 17, 1983).

**5.** *E.g., Gillman v. Preston Family Inv. Co. (In re Richardson),* 27 B.R. 407, 10 B.C.D. 39 (Bkrtcy. D.Utah 1983), *vacated and remanded,* 27 B.R. 962, 10 B.C.D. 182 (D.Utah 1983); *Color Craft Press, Ltd. v. Nationwide Shopper Sys., Inc. (In re Color Craft Press, Ltd.),* 27 B.R. 392, 10 B.C.D. 53 (Bkrtcy.D.Utah 1983), *vacated and remanded,* 27 B.R. 962, 10 B.C.D. 182 (D.Utah 1983); *In re Rivers,* 19 B.R. 438, 8 B.C.D. 1212 (Bkrtcy.E.D.Tenn.1982).

**6.** It is possible an appellate court would draw distinctions—which this Panel has not attempted to do—between "traditional" state common-law actions, which must be heard by Article III courts, and other bankruptcy proceedings which may be heard by an Article I tribunal. *See Northern Pipeline, supra,* 102 S.Ct. at 2882 (Burger, C.J., dissenting). Thus, another possibility to be considered, and yet another reason for a stay, is that the Court of Appeals may conclude that this Panel is authorized to adjudicate some but not all of the appeals pending before it. *See also 1616 Reminc Limited Partnership v. Atchison & Keller Co. (In re 1616 Reminc Limited Partnership),* 704 F.2d 1313, 1317 (4th Cir.1983) ("the degree to which plenary power to adjudicate traditional common law contract claims may be vested in a federal tribunal without full Article III trappings has never been fully defined").

There is much concerning these issues about which I am uncertain, but there is very little in the area of bankruptcy jurisdiction today that is clear-cut. It is for this reason that I disagree with the majority and would urge the issuance of a stay so that the rights of parties will not be finally terminated by a tribunal that may well not exist. I join in the decision to dismiss this appeal because I can find no ground for doing otherwise; but because of the harm that will result to appellants whose cases will be summarily dismissed if the reasoning of the majority is rigorously applied, I write separately.